IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:20-CV-62-FL

LENTON CREDELLE BROWN,                )
                                       )
        Plaintiff,                     )
                                       )        **ORDER and**
    v.                                 )        **MEMORANDUM &**
                                       )        **RECOMMENDATION**
LENOIR COUNTY BOARD OF                 )
ELECTIONS, NORTH CAROLINA              )
BOARD OF ELECTIONS, AMANDA             )
EUBANKS, and DAQUAN (Last Name         )
Unspecified),                          )
                                       )
        Defendants.                    )

This pro se case is before the court on the application [DE #1] of Lenton Credelle Brown ("Plaintiff") to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a)(1) and for frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B), the matter having been referred to the undersigned by the Honorable Louise W. Flanagan, United States District Judge. For the reasons set forth below, Plaintiff's application to proceed in forma pauperis is granted, and it is recommended that Plaintiff's complaint be dismissed.

## IFP MOTION

The standard for determining in forma pauperis status is whether "one cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Based on the information contained in

Plaintiff's financial affidavit, the court finds that Plaintiff has demonstrated appropriate evidence of inability to pay the required court costs. Thus, Plaintiff's application to proceed in forma pauperis is ALLOWED.

## DISCUSSION

## I.    Background

Although not a model of clarity, Plaintiff's proposed complaint appears to assert a conspiracy to violate his rights under the First and Fourteenth Amendments of the United States Constitution and Chapter 163 of the North Carolina General Statutes[1] to run for public office by state and county boards of elections and other individuals.[2] Specifically, Plaintiff alleges the named defendants conspired to "rig" the results of the March 2020 Democratic Party primary election for North Carolina House of Representatives District 12.[3] (Prop. Compl. [DE #1-1] at 2, 3, 8–12; Emergency Mot. to Stop Certification of Election Results ("Emergency Mot.") [DE #1-3] at 1, 5.) Plaintiff seeks to assert four claims for relief pursuant to 42 U.S.C. §§ 1981 & 1983, and he invokes this court's jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343.

---

[1] Chapter 163 of the North Carolina General Statutes governs elections and election laws, with Article 10 of that chapter applying to party primary elections.

[2] Plaintiff also purports to bring his claims pursuant to the Fifth Amendment (Prop. Compl. at 1; Emergency Mot. at 1), but that amendment only applies to the federal government.

[3] Plaintiff occasionally refers to the seat as that for "U.S. House of Representatives District 12." (Prop. Compl. at 2; Emergency Mot. at 1.) Based on Plaintiff's filing and a review of North Carolina State Board of Elections' records, discussed in more detail below, it is clear that Plaintiff ran for a seat in the North Carolina House of Representatives, not the United States House of Representatives.

2

(Prop. Compl. at 1, 3, 9, 13.) Plaintiff seeks monetary, injunctive, and declaratory relief.[4] (*Id.* at 2, 14.)

## A. First Claim for Relief

In his first claim for relief, Plaintiff claims that the primary election results from March 3, 2020, for N.C. House District 12 "must be invalidated" because Virginia Cox-Daugherty, the winner of the Democratic Party primary election, did not pay her candidate filing fee by the December 20, 2019, noon deadline. (Prop. Compl. at 3.) In support, Plaintiff has attached a North Carolina Committee Disclosure Reporting Form 1210 ("Form CRO 1210") which discloses an individual contribution from Ms. Cox-Daugherty to her election committee on December 24, 2019, for the $140 candidate filing fee. (*Id.* at 4; Emergency Mot. at 2.)[5] Plaintiff contends this shows Ms. Cox-Daugherty failed to pay her candidate filing fee on time, thereby rendering her ineligible to stand for election in the primary. (Prop. Compl. at 3; Emergency Mot. at 1.)

---

[4] Plaintiff also requests attorney's fees pursuant to 42 U.S.C. § 1988. (Prop. Compl. at 9, 14.) "However, this explicit statutory authority does not apply to a successful pro se plaintiff." *Vaughan v. Foltz*, No. 2:16-CV-61-FL, 2017 WL 4872484, at *9 n.12 (E.D.N.C. Oct. 27, 2017) (citing *Kay v. Ehrler*, 499 U.S. 432, 438 (1991)).

[5] This form appears to be available on the North Carolina State Board of Elections website by searching the Campaign Finance Report Search. https://cf.ncsbe.gov/CFOrgLkup/ViewDocumentImage/?DID=245207 (last visited Mar. 23, 2021). *See generally* Campaign Finance Report Search, N.C. State Bd. Elections, https://www.ncsbe.gov/campaign-finance/search-campaign-funding-and-spending-reports-and-penalties (last visited Mar. 23, 2021).

Case 4:20-cv-00062-FL   Document 4   Filed 04/01/21   Page 3 of 22

## B. Second Claim for Relief

In his second claim for relief, Plaintiff alleges that the March 3, 2020, Democratic Party primary for N.C. House District 12 "was rigged to favor Candidate Virginia Cox-Daugherty over all other candidates in the race." (Prop. Compl. at 9.) In support, Plaintiff claims "[n]othing points to the N.C. House of Representatives District 12 [Democratic Party primary election] being rigged more than the results of Pitt County District 0601." (*Id.*; Emergency Mot. at 1.) Plaintiff then includes a chart showing none of the N.C. House District 12 Democratic Party candidates (Ms. Cox-Daugherty, Mr. Deonko Brewer, and Plaintiff) received *any* votes in Pitt County "District 0601."[6] (*Id.* at 10.) Plaintiff notes that 1,450 ballots were cast in Pitt County Precinct 0601, but no N.C. House District 12 candidate received any votes. (*Id.*)

Plaintiff also cites further voting statistics from other Pitt County precincts for the N.C. House District 12 Democratic primary election at issue, including statistics showing the results by voting method for Precinct 0200A ("Ayden A") and Precinct

---

[6] Plaintiff's reference to District 0601 appears to be a reference to Pitt County *Precinct* 0601, as this matches Plaintiff's terminology later in his proposed complaint (*see* Prop. Compl. at 10, line 314) and the terminology and information available on the North Carolina State Board of Elections' website. *See* 03/03/2020 Office Primary Election Results – Pitt, N.C. State Bd. Elections, https://er.ncsbe.gov/contest_details.html?election_dt=03/03/2020&county_id=74&contest_id=1902 (last visited Mar. 23, 2021) (disaggregating election results for N.C. House District 12 Democratic Party primary in Pitt County into precincts 0200A, 0200B, 0601, 1001, 1301, 1513B, and various early and provisional voting methods). Furthermore, in his discussion of other election results for this race, Plaintiff identifies *precincts* rather than *districts*. (*See* Prop. Compl. at 10 (discussing results for "Precinct 0200A," "Precinct 0200B," and "Precinct 1001").)

4

0200B ("Ayden B").[7] (Prop. Compl. at 10–11.) Plaintiff contends that it is "statistically improbable that one candidate would receive 138 votes in Ayden A and the other candidate would receive 138 votes in Ayden B." (*Id.* at 10.)

Lastly, in support of his claim that the Democratic primary election for N.C. House District 12 was rigged, Plaintiff alleges "irregularities": (a) an unidentified "eyewitness/minister" was turned away from voting at the Martin C. Freeman polling place in Kinston by white persons not affiliated with the local Board of Elections or the Parks & Recreation department;[8] (b) power outages occurred on March 3, 2020, in Lenoir County, and the power company "had no records of the power being shut off to any of the voting precincts in Lenoir County;" (c) Ms. Cox-Daugherty received a $5,400 campaign contribution from a "billionaire who has offices in Salisbury, North Carolina;" (d) Cox-Daugherty may have received campaign support from supporters of Republican incumbent Chris Humphrey who believed Cox-Daugherty was the weakest of the candidates standing for election in the Democratic primary at issue; (e) Cox-Daugherty may become the subject of federal criminal prosecution; and (f) Cox-Daugherty held her campaign "watch party" at the Lenoir County Board of Elections despite having resigned from the local Board of Elections before the

---

[7] *See also* Pitt Cnty. Precincts map, https://www.pittcountync.gov/DocumentCenter/View/114/Precincts-PDF (last visited Mar. 23, 2021) (noting colloquial names for precincts, including Ayden A and Ayden B).

[8] The Martin C. Freeman Center is a gymnasium in Kinston operated by the Kinston/Lenoir County Parks & Recreation Department. http://kinstonnc.gov/Facilities/Facility/Details/Martin-C-Freeman-Gym-12 (last visited Mar. 23, 2021).

election. (Prop. Compl. at 11.) Plaintiff contends these irregularities, in conjunction with the precinct voting statistics discussed above, show a "conspiracy to rig the election to get Virginia Cox-Daugherty elected with the ultimate goal to help Chris Stephen Humphrey win re-election." (*Id.*)

### C.     Third Claim for Relief

In his third claim for relief, which is similar in substance to the second claim insofar as Plaintiff alleges a conspiracy to rig the results of the Democratic Party primary election for N.C. House District 12, Plaintiff alleges the following facts, which he contends show a conspiracy to interfere with the election at issue: (a) eyewitness "testimony" from unnamed persons working with the Cox-Daugherty campaign that an Amanda Eubanks and Daquan (Last Name Unspecified) "commandeered" Cox-Daugherty's campaign; (b) Cox-Daugherty had a second bank account for campaign contributions that violated unspecified state and federal law; (c) Cox-Daugherty did not post campaign materials in the outlying areas of Lenoir County or anywhere in Pitt County and only posted a few campaign materials in the "main portion" of Kinston on the Saturday before the election; and (d) Cox-Daugherty did not respond to questions from a local newspaper, declined a radio interview, declined multiple candidate speaking forums, and "failed to articulate a platform."[9] (Prop. Compl. at 12.)

---

[9] Plaintiff notes that the other candidate, Mr. Deonko Brewer, also declined some of these events and interviews. (Prop. Compl. at 12.)

### D. Fourth Claim for Relief

In his fourth claim for relief, Plaintiff alleges that Defendants

> developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of black male candidates which were moving forces behind and proximately caused the violations of [Plaintiff]'s constitutional and federal rights as set forth herein . . . [and]

> have developed and maintained long-standing, department-wide customs, policies, procedures, customs, practices, and/or failed to properly train and/or supervise its employees in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff.

(Prop. Compl. at 14.)

### E. Emergency Motion for Relief and Miscellaneous Claims

In his emergency motion to stop the certification of the March 3, 2020, Democratic Party primary election for N.C. House District 12, Plaintiff repeats his first and second claims for relief. Plaintiff also raises the following issues which do not neatly fit within the claims raised in his proposed complaint: (a) "whether a candidate who prevailed in a rigged election can be certified in [v]iolation of Article 1, Section 2 of the U.S. Constitution" and (b) whether the Lenoir County Board of Elections failed to "maintain the security of their voting machines and the integr[i]ty [of] our voting process." (Emergency Mot. at 1 (capitalization removed).)

## II. Standard for Frivolity Review

Notwithstanding the prior determination that Plaintiff is entitled to in forma pauperis status, the court is required to dismiss all or part of an action found to be frivolous or malicious, which fails to state a claim on which relief can be granted, or which seeks money damages from a defendant immune from such recovery. 28 U.S.C.

§ 1915(e)(2); *Michau v. Charleston County*, 434 F.3d 725, 728 (4th Cir. 2006). A case is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Pro se complaints are entitled to a more liberal treatment than pleadings drafted by lawyers. *See White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989). However, the court is not required to accept a pro se plaintiff's contentions as true. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). The court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327 (explaining the "separate function" of frivolity review). In making the "inherently elastic" frivolity determination, *Nagy v. FMC Butner*, 376 F.3d 252, 256–57 (4th Cir. 2004), the court may "apply common sense," *Nasim v. Warden., Md. House of Correction*, 64 F.3d 951, 954 (4th Cir. 1995).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to give a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The statement must give a defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff must offer more detail . . . than the bald statement that he has a valid claim of some type against the defendant." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001); *see also White*, 886 F.2d at 723 (affirming district court's dismissal of suit as frivolous where complaint "failed to contain any factual allegations tending to support [plaintiff's] bare assertion"). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 570. While the court must read the complaint carefully to determine if the plaintiff has alleged facts sufficient to support his claims, *White*, 886 F.2d at 724, the court is not required to act as the pro se plaintiff's advocate or to parse through volumes of documents or discursive arguments in an attempt to discern the plaintiff's unexpressed intent, *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013).

## III.  Plaintiff's Claims

In conducting the frivolity review, the undersigned has considered Plaintiff's proposed complaint, emergency motion, and publicly available records of the North Carolina State Board of Elections and local government agencies of which the court takes judicial notice, consistent with the court's authority to "pierce the veil of [a] complaint's factual allegations" under 28 U.S.C. § 1915(e)(2). *See Neitzke*, 490 U.S. at 327.

Roughly, Plaintiff invokes 42 U.S.C. §§ 1981 & 1983 to vindicate his right to stand for public office, which is protected by the First and Fourteenth Amendments to the U.S. Constitution and further specified under state election laws set forth in N.C. Gen. Stat. § 163-104 *et seq.*[10]

---

[10] Although the U.S. Constitution does not create an explicit right to run for public office, courts have analyzed claims concerning the constitutionality of state restrictions on the right to stand for public office under the First Amendment. *See, e.g., Wood v. Meadows*, 207 F.3d 708, 711–15 (4th Cir. 2000). For purposes here, there is no question that Plaintiff exercised his First and Fourteenth Amendment rights to run for public office.

9

### A.    Section 1981 Claims

As a preliminary matter, Plaintiff's invocation of 42 U.S.C. § 1981 is misplaced. That statute prohibits racial discrimination in the creation and enforcement of contracts. *See, e.g., Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 170–71 (4th Cir. 2020) (per curiam) (unpublished) (summarizing § 1981). Here, Plaintiff has made no allegation that he had a contract with any Defendant, nor could such an inference reasonably be drawn from his proposed complaint. Accordingly, any claims in the proposed complaint pursuant to § 1981 should be dismissed.

### B.    Section 1983 Claims

#### 1.    Legal Framework

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege facts to support the following findings: (1) that he has been deprived of a federal right; and (2) that the person who deprived him of his federal right did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[P]rivate conduct, no matter how discriminatory or wrongful," is not actionable under § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). In sum, § 1983 is the law that provides the legal basis for people to sue government actors for violations of their constitutionally protected rights.

"Ordinarily, private actors are not liable under 42 U.S.C. § 1983, because the statute only provides relief for deprivations of constitutional rights by state actors. Nevertheless, 'private persons who willfully participate in joint action with a state official act under color law within the meaning of § 1983.'" *Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020) (quoting *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1422 (4th Cir. 1983)), *petition for cert. filed*, No. 20-7234 (Feb. 12, 2021). "To establish a conspiracy claim under § 1983, a plaintiff 'must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right.'" *Massey v. Ojaniit*, 759 F.3d 343, 357–58 (4th Cir. 2014) (alteration in original) (quoting *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996)). Such claims carry "a weighty burden" and require "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421. "Conclusory allegations of a conspiracy do not satisfy this 'meeting of the minds' element and therefore fail to state a claim." *Johnson v. Allen*, 416 F. Supp. 3d 550, 561 n.5 (E.D.N.C. 2018) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995), and *Gooden v. Howard Cnty.*, 954 F.2d 960, 970 (4th Cir. 1992) (en banc)).

"To plead a § 1983 claim against a [] local government entity, a plaintiff must allege facts sufficient to support a finding that the alleged unconstitutional action was taken pursuant to an official policy, procedure, or custom of the local governing body." *Vaughan*, 2017 WL 4872484, at *8 (first citing *Monell v. Dep't of Soc. Servs. of*

11

*N.Y.C.*, 436 U.S. 658, 691 (1978); and then citing *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987)). "It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003).

        2.     Analysis

           a.     *Plaintiff's First Claim for Relief*

Under North Carolina law, a person seeking a party primary nomination for a seat in the state House of Representatives must file a notice of candidacy with the county board of elections between noon on the first Monday in December preceding the primary and noon on the third Friday in December preceding the primary. N.C. Gen. Stat. § 163-106.2(b). This notice must be accompanied by a filing fee paid to the county board of elections with which the candidate files, N.C. Gen. Stat. § 163-107(a), or the candidate may file a petition in lieu of paying the filing fee, N.C. Gen. Stat. § 163-107.1. For the March 3, 2020, primary election, the deadline to file a notice of candidacy and to submit the filing fee for N.C. House District 12 was noon on Friday, December 20, 2019, and the filing fee was $140.

According to the Past Candidate List for the March 3, 2020, primary election published by the North Carolina State Board of Elections, three candidates filed for the Democratic Party primary for N.C. House District 12 – Plaintiff, Ms. Virginia Cox-Daugherty, and Mr. Deonko Brewer. Candidate List Grouped by Contest, March 3, 2020, Election, N.C. State Bd. Elections, at 12, https://s3.amazonaws.com/dl.ncsbe.gov/Elections/2020/2020_Primary_Election_Can

didates/2020_primary_candidates_state_level.pdf (last visited Mar. 24, 2021) (dated Jan. 3, 2020) *see generally* Candidate Lists, Results & Data, N.C. State Bd. Elections, https://www.ncsbe.gov/results-data/candidate-lists (last visited Mar. 24, 2021). The State Board of Elections shows that Cox-Daugherty and Brewer filed on December 20, 2019, and Plaintiff filed on December 17, 2019. *Id.* The State Board of Elections document does not show when a candidate's filing was paid or petition in lieu of filing fee filed, *id.*, although state law requires that the fee be paid "[a]t the time of filing a notice of candidacy," N.C. Gen. Stat. § 163-107.

Plaintiff's claim that Ms. Cox-Daugherty did not pay her candidate filing fee on time is belied by information published by the State Board of Elections and by the Form CRO 1210 that Plaintiff has included with his proposed complaint. First, while the State Board's website does not show when Cox-Daugherty paid her filing fee, it does note that she filed her notice of candidacy—which must be accompanied by the filing fee—by the deadline. This fact undermines Plaintiff's claim that Cox-Daugherty did not pay the required fee. (The State Board's website shows similar information regarding both Plaintiff and Mr. Brewer.)

Second, the Form CRO 1210 upon which Plaintiff bases his allegation does not show what Plaintiff contends: the document does not show when Ms. Cox-Daugherty paid her filing fee to the county Board of Elections pursuant to N.C. Gen. Stat. § 163-107(a).[11] (Prop. Compl. at 4; Emergency Mot. at 2.) Rather, the document shows a

_____

[11] This is presumably public information which can be obtained from the county Board of Elections as it is to that body which N.C. House of Representatives party

contribution from Ms. Cox-Daugherty to her campaign for the amount of the candidate filing fee a few days after the filing fee deadline.

Plaintiff's claim seeking to invalidate the March 3, 2020, Democratic Party primary results for N.C. House District 12 because Ms. Virginia Cox-Daugherty did not pay her filing fee on time is frivolous because it lacks an arguable basis in fact. *See Neitzke*, 490 U.S. at 325, 327; *Denton*, 504 U.S. at 32. Accordingly, the undersigned recommends that it be dismissed.[12]

### b. Plaintiff's Second Claim for Relief

As Plaintiff notes, his key fact for contending the March 3, 2020, N.C. House District 12 Democratic primary was rigged are the results for Pitt County Precinct 0601. (Prop. Compl. at 9; Emergency Mot. at 1.) Specifically, Plaintiff asserts that no Democratic candidate received any votes in Precinct 0601, demonstrating the election

---

primary candidates must submit their filing fee. *See* N.C. Gen. Stat. §§ 163-106.2(b), 163-107.

[12] At two points in his filings Plaintiff includes language intimating that he filed complaints with the State Board of Elections regarding whether Ms. Cox-Daugherty paid the requisite filing fee. (Prop. Compl. at 2 ("Action is also brought against North Carolina State Board of Elections for failure to properly investigate and address complaints; especially, the fact Virginia Cox-Daugherty failed to pay the filing [fee] and as such could not run for N.C. House of Representatives-District 12."), 3 ("As stated in a letter to the State Board of Elections, the primary election results for candidate Virginia Cox-Daugherty . . . must be invalidated . . . .").) Plaintiff includes no further information about this.

North Carolina law provides a mechanism for challenging a candidate's satisfaction of constitutional and statutory qualifications for the office. N.C. Gen. Stat. § 163-127.2; *see generally* N.C. Gen. Stat. § 127.1 *et seq.* (statutes governing challenges to candidacy); Candidate Challenges, For Candidates, N.C. State Bd. Elections, https://www.ncsbe.gov/candidates/candidate-challenges (last visited Mar. 24, 2021).

was rigged. (Prop. Compl. at 9–10.) Indeed, the North Carolina State Board of Elections' records confirm that no N.C. House District 12 Democratic candidate received any votes in the March 3, 2020, primary.[13] However, there were votes cast in Precinct 0601 for Democratic Party candidates for N.C. House District 9.[14]

Thus, there is an obvious explanation for Plaintiff's alleged anomaly that no District 12 Democratic candidate received any votes in Precinct 0601: Pitt County Precinct 0601 is in N.C. House District 9, not District 12.[15] This fact undermines the key allegation upon which Plaintiff's second claim for relief depends.

The remaining facts alleged in support of his second claim for relief are insufficient to support a finding of a conspiracy to violate § 1983. First, Plaintiff's assertion of a statistical improbability that his competitors each received 138 votes

---

[13] 03/03/2020 Official Primary Election Results – Pitt, N.C. House of Representatives District 012 - DEM, Results by Precinct, https://er.ncsbe.gov/contest_details.html?election_dt=03/03/2020&county_id=74&contest_id=1902 (last visited Mar. 24, 2021).

[14] 03/03/2020 Official Primary Election Results – Pitt, N.C. House of Representatives District 009 – DEM, Results by Precinct, https://er.ncsbe.gov/contest_details.html?election_dt=03/03/2020&county_id=74&contest_id=1887 (last visited Mar. 24, 2021).

[15] 2019 NC House Map (Interactive), Legislative and Congressional Redistricting, Redistricting, North Carolina General Assembly, https://www.ncleg.gov/Redistricting/DistrictPlanMap/H2019E (last visited Mar. 24, 2021) (filtered to Voting District>Pitt>0601); *see also* "Precincts (PDF)" and "North Carolina House (2019)," Maps, Elections, Government, Pitt Cnty., https://www.pittcountync.gov/DocumentCenter/View/114/Precincts-PDF (Precincts) (last visited Mar. 24, 2021), https://www.pittcountync.gov/DocumentCenter/View/10044/North-Carolina-House-2019 (North Carolina House (2019)) (last visited Mar. 24, 2021).

in the separate Ayden precincts is conclusory, unsupported by factual allegations that would support an inference of wrongdoing. Second, he has alleged no facts that the "eyewitness/minister" was turned away from voting at the Martin C. Freeman gym in Kinston by state actors, nor has he alleged any facts tending to show that the persons who did this had a "meeting of the minds" with the Lenoir County Board of Elections. Regarding his *Monell* claim, he has alleged no official policy, custom, or practice by the Lenoir County Board of Elections to allow non-state actors to engage in this type of conduct. Third, his allegation regarding power outages in Lenoir County on the primary election day has no relevance. That polling stations were unaffected by power outages shows no conspiracy to violate Plaintiff's civil rights.[16] Fourth, the allegations regarding Ms. Cox-Daugherty's campaign contributions and activity are not specific factual allegations that show a meeting of the minds between Defendants to engage in a civil conspiracy. *See Johnson v. Allen*, 416 F. Supp. 3d at 561 n.5.

In sum, Plaintiff's second claim for relief depends in large part—by Plaintiff's own admission—on the statement about zero votes being tabulated for any N.C. House District 12 Democratic candidate in Pitt County Precinct 0601. Because that precinct falls in N.C. House District 9 rather than 12, Plaintiff's conspiracy claim depends solely on irrelevant or conclusory facts that are insufficient to support an

---

[16] To the extent this fact relates to Plaintiff's allegation that the security of the Lenoir County voting machines was comprised (*see* Emergency Mot. at 1), the undersigned fails to understand how the lack of power outages at polling stations on March 3, 2020, in Lenoir County tends to show that the security of said machines was compromised by a civil conspiracy entered into by Defendants.

16

inference that there was a meeting of the minds between Defendants to violate Plaintiff's civil rights. Accordingly, the undersigned recommends that Plaintiff's second claim for relief be dismissed as frivolous or for failure to state a claim.

### c.    *Plaintiff's Third Claim for Relief*

Plaintiff's third claim for relief depends on factual allegations regarding the internal operation of Ms. Cox-Daugherty's campaign. (*See* Prop. Compl. at 12.) There are several problems with this claim. First, Plaintiff has not alleged that Amanda Eubanks and Daquan (Last Name Unspecified) had any conspiratorial agreement with a state actor, as is required to prove a conspiracy claim under § 1983. *See Barrett*, 975 F.3d at 434. Second, whether a candidate engaged in campaign finance violations does not tend to show a meeting of the minds between Defendants. Finally, Ms. Cox-Daugherty's decisions about how to engage with media and where to post campaign literature are not evidence that Defendants had any agreement to illegally influence the outcome of the election at issue. With regard to this claim, Plaintiff has not alleged any facts to support a plausible claim that Defendants conspired to interfere with the March 2020 election. Accordingly, the undersigned recommends that Plaintiff's third claim for relief be dismissed.

### d.    *Plaintiff's Fourth Claim for Relief*

Plaintiff's fourth claim for relief is framed as a *Monell* claim against each Defendant. The individual defendants, Amanda Eubanks and Daquan (Last Name Unspecified), are thus not proper parties. *See Monell*, 436 U.S. at 694 (recognizing § 1983 liability of local government entities based upon official policy, procedure, or

custom). As to the defendant boards of elections, Plaintiff fails to specify which customs or policies they maintained that violated his rights, or in which ways they failed to train or supervise employees who violated his rights. (*See* Prop. Compl. at 14.) To the extent Plaintiff asserts these Defendants failed to enforce the state law requiring Ms. Cox-Daugherty pay her candidate filing fee on time (Prop. Compl. at 2), there are no facts tending to support such a finding. Plaintiff also makes a passing reference to someone named "Amy" who he says worked for the Lenoir County Board of Elections and informed Representative Chris Humphrey's campaign about "election developments." (Prop. Compl. at 2; Emergency Mot. at 1.) Plaintiff includes no other facts about this employee, and even taking his allegations at face value, they are insufficient to support a finding that a custom or practice for § 1983 purposes existed. *See Lytle*, 326 F.3d at 473. Accordingly, Plaintiff has not pleaded facts sufficient to support a finding that any unconstitutional action by "Amy" was made pursuant to official policy, procedure, or custom of the Lenoir County Board of Elections. The undersigned therefore recommends dismissal of Plaintiff's fourth claim for relief.

      e.     *Emergency Motion for Relief and Miscellaneous Claims*

Plaintiff 's emergency motion to prevent certification of the March 2020 election results repeats his first and second claims for relief. (*See* Emergency Mot.) The motion should be denied for the same reasons as those claims should be dismissed.

Plaintiff has also included some additional potential bases for claims which the undersigned, out of an abundance of caution, addresses briefly. First, Article 1, § 2 of the U.S. Constitution applies to the United States House of Representatives, not the North Carolina House of Representatives. Thus, any claim Plaintiff may have articulated with respect to this constitutional provision is inapplicable. Plaintiff has also included a conclusory allegation that the Lenoir County Board of Elections failed to maintain the integrity of voting machines in use during the March 3, 2020, primary election. As Plaintiff has not included any facts to support this allegation, Plaintiff's claim should be dismissed as frivolous or for failure to state a claim.

*f.*     *Equal Protection*

At several points in his filings, Plaintiff invokes the Equal Protection Clause of the Fourteenth Amendment and alleges race-based discrimination by Defendants. Plaintiff's invocation of 28 U.S.C. § 1343 also references race-based discrimination, to the extent that statute grants federal courts jurisdiction over claims brought pursuant to 42 U.S.C. § 1985, which authorizes a cause of action for civil conspiracy claims motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). (Prop. Compl. at 1 (race), 2 (Equal Protection Clause), 7 (Equal Protection Clause for "class of one" claims), 14 (race); Emergency Mot. at 1 (Equal Protection Clause).)

Section 1985 claims are similar to civil conspiracy claims brought under § 1983 except that they must include a discrimination component. "To maintain a cause of action for conspiracy to deny equal protection of the laws under § 1985, 'a plaintiff

19

must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.'" *Johnson v. City of Fayetteville*, 91 F. Supp. 3d 775, 796 (E.D.N.C. 2015) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citations omitted)). A plaintiff's mere membership in a protected class "is insufficient to support an inference of discriminatory motivation in a section 1985 claim." *Johnson*, 91 F. Supp. 3d at 796 (citing multiple cases). A § 1985 conspiracy claim also requires that a plaintiff show "an agreement or a 'meeting of the minds' by defendants to violate the [plaintiff]'s constitutional rights." *Simmons*, 47 F.3d at 1377 (citing Seventh and Ninth Circuit cases).

Here, aside from noting his membership in a protected class (Prop. Compl. at 1), Plaintiff has not pleaded any facts sufficient to support a finding that Defendants had a conspiratorial agreement to violate Plaintiff's rights motivated by racial animus. *See Johnson v. City of Fayetteville*, 91 F. Supp. 3d at 796.[17] Accordingly, any Equal Protection or § 1985 claim should be dismissed.

---

[17] Plaintiff makes no claim that he was treated as a "class of one" such that he was "intentionally treated differently from others similarly situated and that there was no rational basis to support the different treatment." *Maages Auditorium v. Prince George's Cnty., Md.*, 4 F. Supp. 3d 752, 776 (D. Md. 2014) (quoting *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005)). He does recite case law explaining "class of one" jurisprudence. (Prop. Compl. at 7.)

## CONCLUSION

For the reasons stated above, Plaintiff's application to proceed in forma pauperis is ALLOWED, and it is RECOMMENDED that Plaintiff's motion to prevent certification of election results be DENIED and his claims be DISMISSED as frivolous or for failure to state a claim upon which relief can be granted.

IT IS DIRECTED that a copy of this Order and Memorandum and Recommendation be served on Plaintiff. Plaintiff shall have until **April 19, 2021**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b) (E.D.N.C. Dec. 2019).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district

judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 31st day of March 2021.

KIMBERLY A. SWANK
United States Magistrate Judge