RECEIVED
APR 10 2020 REC'D
JRA
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| BROWN, LENTON CREDELLE | ) | |
| | ) | |
| VS. | ) | Case No. 4:20-CV-62-FL |
| | ) | |
| | ) | AMENDED COMPLAINT |
| LENOIR COUNTY BOARD OF | ) | |
| ELECTIONS | ) | JURY TRIAL DEMANDED _____ |
| | ) | |
| NORTH CAROLINA STATE BOARD | ) | |
| OF ELECTIONS | ) | |
| AMANDA EUBANKS | ) | |
| Daquan | ) | |

## AMENDED COMPLAINT

Come the Plaintiffs and for cause of action would state as follows:

### 1. INTRODUCTION

1.This action is brought by Lenton Credelle Brown, an African American college educated

veteran who ran for North Carolina House of Representatives District 12 to vindicate profound

deprivations of my constitutional rights as a result of race based policies, procedures, customs,

practices.

2. This action arises under the First, Fifth, and Fourteenth Amendments to the United States
Constitution; under federal law, specifically, **42 U.S.C.§ 1981, 42 U.S.C. 1983, 42 U.S.C. §
1988, 28 U.S.C. §1343(a)(3) or the general federal question jurisdiction statute, 28
.S.C. § 1331.42,** and under North Carolina General Statutes Chapter 163,

3. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. §
1343, 28 U.S.C. § 2201.

4. Venue is properly set in the United States District Court for the District of Eastern
North Carolina pursuant to 28 U.S.C. §1391.

5. The Case Issue is: (1). whether a candidate who failed to meet the minimum requirements

34       **to be in the race which is payment of the required entrance fee on or before December 20,**
35       **2019 at 12:00 p.m. should be certified as the winner, (2). whether election results which**
36       **the data clearly shows were tampered with or falsified in violation of the Fifth**
37       **Amendment Due Process Clause, the Fourteenth Equal Protection Clause should be**
38       **certified, and (3). whether a candidate who prevailed in a rigged election can be certified**
39       **in Violation of Article 1, Section 2 of the U.S. Constitution.** Article I, Section 2, specifies
40       that the House of Representatives be composed of members who are chosen every two
41       years by the people of the states. The evidence will show alleged corruption on the part of
42       Candidate Virginia Cox-Daugherty in that she allegedly conspired with Amanda Eubanks to
43       rig the election, and allegedly took monies that exceeded $1,000 without reporting the
44       contributions in the required 48 hour period. Also at issue was whether the Local Board of
45       Local Elections serve as a neutral body or was employee Amy the eyes and ears of the Chris
46       Humphrey campaign.

47       Also, at issue is the Lenoir County Board of Elections role in perpetrating this

48       ELECTION DAY/PRIMARY FRAUD/HOAX ON THE CITIZENS OF U.S. HOUSE OF

49       REPRESENTATIVES DISTRICT 12 AND THEIR ABJECT FAILURE TO MAINTAIN THE

50       SECURITY OF THEIR VOTING MACHINES AND THE INTEGRETY OUR VOTING PROCESS.


51  6. Action is also brought against North Carolina State Board of Elections for failure to properly
52  investigate and address complaints; especially, the fact Virginia Cox-Daugherty failed to pay the filing
53  and as such could not run for N.C. House of Representatives-District 12. The North Carolina Board of
54  Elections failed to properly train and supervise the individuals at the Local Board Level. They failed to
55  ensure all candidates were treated fairly and equally; as evidenced by, Amy allegedly frequently
56  informing the Chis Humphrey's Campaign concerning election developments. They failed to enforce
57  state policies, procedure, practices and customs equally and fairly in Violation of the Fifth and
58  Fourteenth Amendments to the United States Constitution; for example, allowing Virginia Cox-
59  Daugherty to run after she failed to pay the fee to enter the race that everyone else was required to pay
60  on December 20, 2019. The Defendants North Carolina State Board of Elections, and the Lenoir
61  County Board of Elections are subdivisions of the State of North Carolina, and were at all times
62  material to the allegations in this Complaint,

63  7.      The causes of action alleged herein arise from factual allegations occurring in this judicial
64  district.

65  8..     On information and belief, it is alleged that almost all of the named Defendants resides in this

66  judicial district and are residents of the State of North Carolina.

67  9..     Plaintiffs reside inside the State of North Carolina.

68  10.     This case in instituted in the United States District Court for the Eastern District pursuant

69  to 28 U.S.C. § 1391 as the judicial district in which all relevant events and omissions occurred and

70  in which Defendants maintain offices and/or reside.

71  11..    The amount in controversy is in excess of $ 10,000.000.00.

72

**A. Plaintiffs.**

12..    Plaintiff's mailing address is: Post Office Box 248, Winterville, North Carolina  28590.

Plaintiff resides at 235 Hewitt Way, Grifton, North Carolina  28530.

13.    At all times relevant hereto, Plaintiff Lenton Credelle Brown was a resident of the State of North Carolina and a citizen of the United States of American.

.

**The Defendant's**

The Defendants, the North Carolina State Board of Elections, and the Lenior County Board of

Elections are  and corporate institution within the State of North Carolina  that is organized and

exists pursuant to North Carolina General Statutes 163, et. Seq. and, is a state agency that is

empowered to sue and be sued..

27.

The State Board  of Elections of has the responsibility for establishing and implementing policies, practices, procedures, and customs used by the  Lenoir county Board of Elections.

**IV.  FACTS**


**FIRST CLAIM FOR RELIEF 42 U.S.C. § 1981 –  As stated in a letter to the State Board of Elections, the primary election results for candidate Virginia Cox-Daugherty for N.C. House of Representatives District 12 must be invalidated because per her own documents,  it shows her Candidate Filing Fee being paid on 12/24/2019 in the amount of $140.00.  The deadline for paying this fee would have been 12/20/2019 at 12:00 p.m. The fact that she failed to meet this critical deadline made her ineligible to participate in the race in the first place.**

**170. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set**

**forth herein.**


**42 USC Section 1983- Civil Action for Deprivation of Rights**

**The Civil Action for Deprivation of Rights Act is commonly known as Section 1983. The purpose of the Act is to provide a private remedy for violations of Federal Law. Section 1983 states:**

**"Every person who under color of any statute, ordinance, regulation**

**custom or usage of any State or Territory or the District of Columbia,**

**subjects, or causes to be subjected, any citizen of the United States or**

**other person within the jurisdiction thereof to the deprivation of any**

**rights, privileges or immunities secured by the Constitution and laws,**

## Contributions from Individuals

Pg ___1___ of ___1___    Amendment ☒ Yes  ☐ No

Use this form to report individual contributions over $50 or contributions under $50 if form CRO 1205 is not used

| 1. Committee Full Name (and Fund if appropriate) | 2. ID Number |
|---|---|
| COMMITTEE TO ELECT VIRGINIA COX-DAUGHERTY | STA-4W3K15-C-001 |

**3. Contributor Information**    ☐ Add  ☐ Remove

| a. Full Name, Mailing Address & Phone (include city, state, & zip) | b. Job Title/Profession | d. Comments |
|---|---|---|
| VIRGINIA COX-DAUGHERTY<br>404 DUGGINS DRIVE<br>KINSTON, NC 28501<br>(252) 939-1082 | RETIRED | |
| | e. Employer's Name/Specific Field | |
| | RETIRED | e. Election Sum to Date<br>$ 1,000.0 |

| f. Prior | g. Account Code | h. Form of Payment | i. In-Kind Description | j. Date (mm/dd/yyyy) | k. Amount |
|---|---|---|---|---|---|
| ☐ | | In-Kind | CANDIDATE FILING FEE | 12/24/2019 | $ 140.0 |
| ☐ | | | | | $ |
| ☐ | | | | | $ |
| **4. Total This Page** | | | | | $ 140.00 |
| **5. Total of ALL CRO-1210 Pages** | | | | | $ 140.00 |

CRO-1210                    NC State Board of Elections                    April 200

107     shall be liable to the party injured in an action at law, suit in equity,

108     or other proper proceeding for redress, except that in any action

109     brought against a judicial officer for an act or omission taken in

110     such officer's judicial capacity, injunctive relief shall not be granted

111     unless a declaratory decree was violated or declaratory relief was

112     unavailable.  For the purposes of this section, any Act of Congress

113     applicable exclusively to the District of Columbia shall be considered

114     to be a statute of the District of Columbia."

115     The most common use for Section 1983 has been to get relief for those deprived of
116     their rights by police officers and other law enforcement officials. But in 1961, The Supreme
117     Court of the United States articulated three purposes that bolster the statute in Monroe v. Pape,1
118     where Mr. Monroe was allowed to sue Chicago police officers who allegedly committed gross
119     violations of his constitutional rights.  Due to this decision, Section 1983 can be used:

120     "1. To override certain kinds of state laws.

121     2.  To provide a remedy where state law was inadequate and

122                             1 Monroe v. Pape, 365 U.S. 167(1961)

123     2

124

125     3. To provide a Federal remedy where the state remedy, though adequate in theory, was
126     not available in practice."

127     4. To permit private litigants a Federal court remedy as a first resort

128      rather than having to first bring suit in state court."

129     Simply put, a litigant does not have to begin in state court.

130     However, if the plaintiff chooses to sue under Section 1983 in

131     state court, the defendant also has the right to remove the case

132      to Federal Court.

133

134     The Supreme Court has further interpreted Section 1983 to allow liability to be found
135     where government officials act outside the scope of the authority granted to them by state law.
136     Section 1983 clearly provides:

137     1. Only persons under the statute are subject to liability, not the state.

138     State Officers can be sued in their official capacity for injunctive relief.

139     Note:  A suit against a government official acting in his or her official capacity represents
140     nothing more than a suit against the Federal, state or local government entity itself.  Individual
141     employees of any Federal, state or local government may be sued for damages.2

142

143     2. The Defendant (local, state or Federal government official) must have

144              exercised power given to her or him by virtue of state law and made

145              possible only because the defendant is "clothed with the authority

146              of state law" even if the defendant abuses his or her position. This is the

147              definition of "acting under the color of state law."

148

149                                    2  Forsythe, Ian D. "A Guide To Civil Rights Liability Under
150  42 U.S.C. 1983: An Overview of Supreme Court and Eleventh Circuit Precedent," p.8, as found
151  on www.constituion.org/brief/forsythe_42-1983.htm

152  **3**

153

154             3. There must be"causal connection" between the defendants's actions

155               and the harm that results. There is no "state of mind" or "intent"

156               requirement. The only requirement is that the action taken by the

157               government causes harm and is a result of an executed policy

158               statement, ordinance, regulation or decision officially adopted and

159              authorized by that body's officers or the result of that entity's

160              customs.

161        Section 1983 is not, in and of itself, a source of substantive rights. It provides a method
162  for the vindication of rights already conferred in the United States Constitution and Federal
163  Laws. A person bringing an action under Section 1983 may prevail only if he or she can
164  demonstrate (show) that he or she was "deprived" of rights secured by the United States
165  Constitution or federal statutes.

166        The origins of Section 1983 can be traced back to the post Civil War South, when
167  African Americans suffered abuses at the hands of state and local officials who chose not to
168  follow United States Constitutional law, but instead followed local customs to keep systems of
169  discrimination and segregation in place.

170                          Types of Section 1983 Claims

171

172  2. First Amendment Claims:

173   Section 1983 can be employed in matters where there is a First Amendment right to free speech
174  concerning government employees. Protection against retaliation by government entities against
175  whistleblowers is the goal in these claims. The speech protected in these cases must concern a
176  matter or matters of public concern or relevance in the community where the matter occurs, and
177  not "purely personal grievances".5 In "Pickering v. Board of Education", Pickering was a
178  3 Loevy, Jon " Section 1983 Litigation In A Nutshell: Make A Case Out of It!", The Journal of
179  the DuPage County Bar Association, Volume 17(2004-05),p.2 4 Houlihan, Michael "Civil Rights-
180  Section 1983-Wrongful Death Action-Availability of Damages in Excess of Those  Permitted
181  Under State Law- Jones v. Hildebrant,(Colo.1976), Western New England Law Review, Volume
182  1,Issue1(1978-1979) pg.149-152 5 op. cit., Loevy, p.2

183  5 schoolteacher who wrote a letter to the local newspaper criticizing the Board of Education (his

184 employer) for its handling of school finances. As a result, Pickering lost his job.6 Under
185 Pickering, the court rejected the notion that teachers may be constitutionally compelled to give
186 up the First Amendment rights enjoyed by all citizens to comment on matters of public interest
187 concerning the public schools where they work.

188 3. Equal Protection Claims:

189  Equal Protection claims can be brought where one class of people is treated differently than
190 another by a Federal, state or local government or its officials.  This is the case when minorities
191 bring discrimination claims against governmental entities.

192 The Courts have also recognized "class of one" claims. If an individual can show that he or she
193 has been "singled out" for irrational or differential treatment by a Federal, state or local
194 government entity or official, Section 1983 can be used in filing a "class of one claim."  This
195 occurred in "Olech v. Village of Willowbrook"7. The Olechs sued the Village of Willowbrook in
196 Federal Court (Section 1983) for delaying their access to the village water line in 1995. The
197 Olechs maintained that the Village denied them access due to an earlier lawsuit they had filed
198 against the village over an easement, which they successfully won. They believed that the officials
199 for the Village of Willowbrook intentionally withheld the water line, causing them to have to use
200 an over ground rubber hose to connect to a neighbor's  well for water. They also believed that the
201 Village officials intentionally waited until winter to attempt to solve their water problems,
202 knowing that the rubber hose would freeze and leave them without water for the entire winter.
203 The Olechs were in their seventies and showed that these actions caused them suffering and
204 "singled them out" as no other citizens of the Village had been treated in such a manner.

205

206

207                                    6 Wells, Michael, "Section 1983, the First Amendment, and
208 Public Employee Speech: Shaping the Right to Fit the Remedy (and Vice Versa), University of
209 Georgia Law, Faculty Scholarship, Digital Commons@Georgia Law, April 1, 2001, pg 939-946. 7
210 Richter, Nicole, "A Standard for "Class of One" Claims Under the Equal Protection Clause of
211 the Fourteenth Amendment: Protecting Victims of Non-Class based Discrimination From
212 Vindictive State Action", Valparaiso University Law Review, Volume35, Number 1, Fall 2000,
213 pg.197-200.

214   .

215 8. Actions Against Private Entities-Section 1983:

216 In some cases, wrongdoers are not Federal, state or even local government entities. They can be
217 privately owned and operated concerns acting pursuant to a "custom or usage", which had the
218 force of law in the state.  In "Adickes v. S.H. Kress & Company, 398 U.S. 144 90 S. Ct. 1598, 26
219 L.Ed.2d 142 (1970)"12 The plaintiff was able to prove that she was refused service in a restaurant
220 and determined to be a vagrant due to her race based on  a state-enforced custom of racial
221 segregation, even though no state statute promoted racial segregation in restaurants.

222                     Statute of Limitations and Section 1983

223                     There is no specific statute of limitations under Section 1983. Statute of
224 Limitations refers to the time limit in which a claim or action must be brought after any alleged
225 violation occurs.13 However, 42 U.S.C.A. Section 1988 (1976) states that where the Federal law
226 does not provide a statute of limitations, state law shall apply.

227 Under Section 1983, the statute of limitations does not begin to run until the "cause of action
228 accrues." The cause of action accrues when the injured party (the Plaintiff) knows or has reason
229 to know of the injury, which is the basis of the action.14("Cox v. Stanton, 529 F.2d
230 47[4thCir.1975]) In employment law cases, the cause of action accrues when the discriminatory
231 act occurs. Simply put, if an employee is notified that he or she is to be released from
232 employment, the statute of limitations begins when the employee is notified, not when the
233 termination begins.15(Chardon v. Fernandez, 454 U.S. 6, 102 S. Ct. 28, 70 L. Ed. 2d 6 [1981]).

234

235          **00**

236 **171. 42 U.S.C. § 1981 provides that:**

237   **(a) STATEMENT OF EQUAL RIGHTS**

238 All persons within the jurisdiction of the United States shall have the same right in
239 every State and Territory to make and enforce contracts, to sue, be parties, give
240 evidence, and to the full and equal benefit of all laws and proceedings for the
241 security of persons and property as is enjoyed by white citizens, and shall be
242 subject to like punishment, pains, penalties, taxes, licenses, and exactions of
243 every kind, and to no other.
244 **(b) "MAKE AND ENFORCE CONTRACTS" DEFINED**

245 For purposes of this section, the term "make and enforce contracts" includes the
246 making, performance, modification, and termination of contracts, and the
247 enjoyment of all benefits, privileges, terms, and conditions of the contractual
248 relationship.
249 **(c) PROTECTION AGAINST IMPAIRMENT**

250 The rights protected by this section are protected against impairment by
251 nongovernmental discrimination and <u>impairment under color of State law.</u>
252 (R.S. § 1977; Pub. L. 102–166, title I, § 101, Nov. 21, 1991, 105 Stat. 1071.)

253     1. Plaintiff in this action is a citizen of the United States as are all of the individual
254         at the Local and State Board of Elections are for purposes of 42 U.S.C. § 1981, 1983.

255     2. All individual Defendants to this claim, at all times relevant hereto, were acting under the
256         color of state law in their capacity and their acts or omissions were conducted within the
257         scope of their official duties or employment.

258     3. At the time of the complained of events, Plaintiff had the clearly established constitutional
259         right to be exercise protected speech and to have his complaint heard and acted upon.

260     4. Any reasonable supervisor knew or should have known of this right at the time of the
261         complained of conduct as it was clearly established at that time.

262         Mr. Brown exercised his constitutionally protected right to engaged in protected speech by
263 running for elected office.

264     5. All of Defendant employee participated in retaliation against the Plaintiff for his protected
265         speech and none of the Defendant officers took reasonable steps to protect Plaintiff from
266         this retaliation for the protected speech.

267  6. They are each therefore liable for the damages resulting from the objectively unreasonable
268     and conscience shocking actions.

269  7. Defendants engaged in the conduct described by this Complaint willfully,
270     maliciously, in bad faith, and in reckless disregard of Mr. Brown's federally protected
271     constitutional rights.

272  8. The acts or omissions of all individual Defendants were moving forces behind
273     Plaintiff's damages.

274  9. These individual Defendants acted in concert and joint action with each other.

275  10. The acts or omissions of Defendants as described herein intentionally deprived
276     Plaintiff of his constitutional and statutory rights and caused him other damages.

277  11. Defendants are not entitled to qualified immunity for the complained of conduct.

278  12. The Defendants to this claim at all times relevant hereto were acting pursuant to
279     state custom, policy, decision, ordinance, regulation, widespread habit, usage, or
280     practice in their actions pertaining to Plaintiff.

281  13. As a proximate result of Defendants' unlawful conduct, Plaintiff received actual physical
282     and emotional injuries, and other damages and losses as described herein entitling him to
283     compensatory and special damages.

284  14. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special
285     damages, and may continue to incur other special damages and related expenses, in
286     amounts to be established at trial.

287     Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-
288  judgment interest and costs as allowable by federal law. There may also be special damages for
289  lien interests.

290  15. In addition to compensatory, economic, consequential and special damages,

291  16. Plaintiff is entitled to punitive damages against each of the individually named Defendants
292     under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have
293     been taken maliciously, willfully or with a reckless or wanton disregard of the
294     constitutional rights of Plaintiff.

295

296  SECOND CLAIM FOR RELIEF 42 U.S.C. § 1981 –The election was rigged to favor
297     Candidate Virginia Cox-Daugherty over all other candidates in the race.

298  Nothing points to the N.C. House of Representatives District 12 being rigged more than the results of
299  Pitt County District 0601. This is one of the largest districts in Pitt County with 4,617 registered
300  voters. During the election there were over 1,450 ballots cast. The State of North Carolina's official
301  election results which they are desperate trying to certify shows the following:

302 **In District 0601, 1450 ballots were actually cast without any candidate receiving a single vote.**

303 **Results by Voting Method for 0601**

| Choice | Total Votes | Percent | Election Day | Absentee One-Stop | Absentee By-Mail | Provisional |
|---|---|---|---|---|---|---|
| Deonko Brewer | 0 | 0.00% | 0 | 0 | 0 | 0 |
| Lenton Credelle Brown | 0 | 0.00% | 0 | 0 | 0 | 0 |
| Virginia Cox-Daugherty | 0 | 0.00% | 0 | 0 | 0 | 0 |

304 In Precinct 0200A, Virginia Cox Daugherty received 138 votes.
305 In Precinct 0200B, Deonko Brewer received 138 votes.

306 See Results by Voting Method for 0200A & 0200B

307 It is statistically improbable that one candidate would receive 138 votes in Ayden A and the other
308 candidate would receive 138 votes in Ayden B.

309 **All the vote totals are extremely low and do not mirror the total of ballots cast in the voting which**
310 **was near historic levels and exceeded the voting in 2018**

311 **Results by Voting Method for 0200A**

| Choice | Total Votes | Percent | Election Day | Absentee One-Stop | Absentee By-Mail | Provisional |
|---|---|---|---|---|---|---|
| Virginia Cox-Daugherty | 138 | 50.36% | 138 | 0 | 0 | 0 |
| Deonko Brewer | 80 | 29.20% | 80 | 0 | 0 | 0 |
| Lenton Credelle Brown | 56 | 20.44% | 56 | 0 | 0 | 0 |

312 **Results by Voting Method for 0200B**

| Choice | Total Votes | Percent | Election Day | Absentee One-Stop | Absentee By-Mail | Provisional |
|---|---|---|---|---|---|---|
| Deonko Brewer | 138 | 46.00% | 138 | 0 | 0 | 0 |
| Virginia Cox-Daugherty | 116 | 38.67% | 116 | 0 | 0 | 0 |
| Lenton Credelle Brown | 46 | 15.33% | 46 | 0 | 0 | 0 |

313 In contrast in Precinct 1001, only 408 votes were cast. Yet the candidates received a combined total of
314 314 votes out of the 408. Remember 1450 votes cast in Precinct 0601 without a singe candidate

315 receiving a single vote.

316 **Results by Voting Method for 1001**

| Choice | Total Votes | Percent | Election Day | Absentee One-Stop | Absentee By-Mail | Provisional |
|---|---|---|---|---|---|---|
| Virginia Cox-Daugherty | 183 | 58.28% | 183 | 0 | 0 | 0 |
| Deonko Brewer | 66 | 21.02% | 66 | 0 | 0 | 0 |
| Lenton Credelle Brown | 65 | 20.70% | 65 | 0 | 0 | 0 |

317 **We have an eyewitness/minister who stated during the snow storm that**
318 **occurred prior to the election she saw a vehicle parked near the largest**
319 **polling precinct in Kinston, Martin C. Freeman.**
320 **She entered to try to vote and was turned back by a large white woman and a**
321 **white man. The polls were closed and the building should have been locked**
322 **up; instead it was wide open. These were not staff associated with the Board**
323 **of Elections or Parks and Recreation. Her testimony will be submitted to the**
324 **Court in a confidential manner.**

325 Also, during the March 3, 2020 primary, there were power outages lasting between 20 minutes to 1
326 hour depending on the precinct in Lenoir County. Despite the power outage the voters continued
327 voting. The power company was called and they had no records of the power being shut off to any of
328 the voting precincts in Lenoir County.

329 There are other irregularities that would lead one to the inescapable conclusion that the voting booths
330 were tampered with in an effort to insure that Virginia Cox-Daugherty won the race.
331 Virginia Cox-Daugherty received the maximum contribution in the amount of $5400 from a billionaire
332 who has offices in Salisbury, North Carolina.
333 Virginia Cox-Daugherty like Erica D. Smith may have allegedly received support from supporters of
334 Chris Humphrey who thought that she was the weakest of the three candidates in the primary. Virginia
335 Cox-Daugherty is expected allegedly to become the subject of Federal Criminal Prosecution; shortly,
336 which would guarantee Chris Humphrey's re-election in November.

337 Virginia Cox-Daugherty is said to have resigned from the Board of Elections on December 20, 2019;
338 yet, her Watch Party was held at the Board of Elections.

339 The evidence in this case points to a conspiracy to rig the election to get Virginia Cox-Daugherty
340 elected with the ultimate goal to help Chris Stephen Humphrey win re-election which is not unlike all
341 of the hundreds of thousands of dpllars that Erica Smith received from Republican leaning packs
342 except that they didn't rig the vote.

343 **THIRD CLAIM FOR RELIEF 42 U.S.C. § 1981 VIOLATION OF FIFTH AND FOURTEENTH**

344 **ADMENDMENT (Conspiracy to interfere with the 2020 elections)**

345 **We have eyewitness testimony from individuals working with the Virginia Cox-Daugherty**
346 **campaign that AMANDA EUBANKS and Daquan essentially commandeered the campaign**

347 **and that there was a second bank account allegedly opened and that contributions in excess of**
348 **$1000 were not being report in the 48 hour time frame as required by State and Federal law.**

349 **Eyewitnesses that were part of her campaign staff were not allowed to spend any funds from the**

350 **account while these two individuals allegedly coordinated the rigging of the election. Interesting**
351 **enough the Virginia Cox-Daugherty campaign did not post any campaign posters in Lenoir**
352 **County until Saturday before the election. There were just a few posted in the main portion of**
353 **Kinston. She failed to post any campaign posters in the outlying areas of the Lenoir County or in**
354 **Pitt County.**

355 **Candidate Virginia Cox-Daugherty in Newspaper Article published by the Daily Reflector on**
356 **February 25, 2020 refused to debate, render any opinions, or answer any questions on any issues;**
357 **especially, the ones important to the residents of District 12. Her official response was "no**
358 **comment", this coming just days before the election.**

359    A candidate debate was scheduled to occur on February 28, 2020 Friday at 10:00 a.m. and was being
360 sponsored by Awesome Radio. Candidate Virginia Cox-Daugherty and Deonko Brewer apparently
361 declined to accept the invitation.

362    When the Daily Drum Media Group hosted a Candidate Forum, Candidates Virginia Cox- Daugherty
363 and Deonko Brewer was noticeably absent. The Holly Hill Family Life Center hosted a 2020 Primary
364 Candidates Forum and invited all candidates on February 10, 2020. N.C. House of Representative-
365 District 12 Candidates Virginia Cox-Daugherty and Deonko Brewer failed to attend this forum as well.
366 Another Candidate Forum was held in Raleigh which Virginia Cox-Daughter and Deonko Brewer
367 failed to attend also.

368    **Virginia Cox-Daughtery has failed to articulate a platform.**  Virginia Cox-Daugherty did not
369 have the moral courage to show up and debate the issues with me in any of the Candidate Forums for
370 the House of Representative District 12. Candidate Lenton Brown attended all three 2020 Candidate
371 Forum and many of the discussions that he had with the citizens helped form the basis of his platform.
372 **The  people of District 12 had the absolute right to hear from each of theses candidates running**
373 **for office.**

374 It is interesting to not that state policy prohibit state employees from interfering with elections.

375 Article 5.

376 Political Activity of Employees.

377 § 126-13. Appropriate political activity of State employees defined.

378 (a)      As an individual, each State employee retains all the rights and obligations of citizenship
379 provided in the Constitution and laws of the State of North Carolina and the Constitution and laws of

380 the United States of America; however, no State employee subject to the North Carolina Human
381 Resources Act or temporary State employee shall:

382 **(1)** **Take any active part in managing a campaign, or campaign for political office or**
383 **otherwise engage in political activity while on duty or within any period of time during which he**
384 **is expected to perform services for which he receives compensation from the State;**

385 **(2)** **Otherwise use the authority of his position, or utilize State funds, supplies or vehicles to**
386 **secure support for or oppose any candidate, party, or issue in an election involving candidates for**
387 **office or party nominations, or affect the results thereof.**

388 (b)    No head of any State department, agency, or institution or other State employee exercising
389 supervisory authority shall make, issue, or enforce any rule or policy the effect of which is to interfere
390 with the right of any State employee as an individual to engage in political activity while not on duty or
391 at times during which he is not performing services for which he receives compensation from the State.
392 A State employee who is or may be expected to perform his duties on a twenty-four hour per day basis
393 shall not be prevented from engaging in political activity except during regularly scheduled working
394 hours or at other times when he is actually performing the duties o---f his office. The willful violation
395 of this subdivision shall be a Class 1 misdemeanor.  (1967, c. 821, s. 1; 1985, c. 469, s. 1; c. 617, s. 5;
396 1993, c. 539, s. 930; 1994, Ex. Sess., c. 24, s. 14(c); 2013-382, s. 9.1(c).)

397       I had an absolute right to enter the race and to run for the N.C. House of Representative-District
398 12.  Neither Amanda nor Daquan had a right to interfer in the election process by trying to find a
399 suitable candidate for the N.C. House of Reprentatives-District 12 post.

400 **FOURTH CLAIM FOR RELIEF Violation of 42 U.S.C. § 1981 – Deliberately Indifferent Policies,**
401 **Practices, Customs, Training, and Supervision in violation of the Fourth, Fourteenth, and First**
402 **Amendments and in violation of 42 U.S.C. § 1981 ( )**

403 **208. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set**

404 **forth herein.**

405 **. 42 U.S.C. § 1981 provides that:**

406 **(a) STATEMENT OF EQUAL RIGHTS**

407 All persons within the jurisdiction of the United States shall have the same right in
408 every State and Territory to make and enforce contracts, to sue, be parties, give
409 evidence, and to the full and equal benefit of all laws and proceedings for the
410 security of persons and property as is enjoyed by white citizens, and shall be
411 subject to like punishment, pains, penalties, taxes, licenses, and exactions of
412 every kind, and to no other.
413 **(b) "MAKE AND ENFORCE CONTRACTS" DEFINED**

414 For purposes of this section, the term "make and enforce contracts" includes the
415 making, performance, modification, and termination of contracts, and the
416 enjoyment of all benefits, privileges, terms, and conditions of the contractual
417 relationship.
418 **(c) PROTECTION AGAINST IMPAIRMENT**

419 The rights protected by this section are protected against impairment by

420 nongovernmental discrimination and impairment under color of State law.
421 (R.S. § 1977; Pub. L. 102–166, title I, § 101, Nov. 21, 1991, 105 Stat. 1071.)

422 **210. Plaintiff in this action is a citizen of the United States and Defendants to this**

423 **claim are persons for purposes of 42 U.S.C. § 1983.**

424 **211. The Defendants to this claim at all times relevant hereto were acting under the**

425 **color of state law.**

426   **These Defendants developed and maintained policies, procedures, customs,and/or practices**
427 **exhibiting deliberate indifference to the constitutional rights of black male candidates which were**
428 **moving forces behind and proximately caused the violations of Mr. Brown's constitutional and**
429 **federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate**
430 **choice to follow a course of action from among various available alternatives.**

431 **219. Defendants have developed and maintained long-standing, department-wide customs,**
432 **policies, procedures, customs, practices, and/or failed to properly train and/or supervise its**
433 **employees in a manner amounting to deliberate indifference to the constitutional rights of**
434 **Plaintiff. In light of the duties and responsibilities of their employees , the need for specialized**
435 **training and supervision is so obvious, and the inadequacy of training and/or supervision is so**
436 **likely to result in the violation of constitutional and federal rights such as those described herein**
437 **that the failure to provide such specialized training and supervision is deliberately indifferent to**
438 **those rights.**

439 **224. Finally, Plaintiff seeks appropriate declaratory and injunctive relief which includes an**
440 **Emergency Permanent Injunction Against The Certification of Falsified Election Results.**

441 **VI. PRAYER FOR RELIEF**

442 **Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the**

443 **Defendants and grant:**

444 **A. compensatory and consequential damages, including damages for emotional distress,**
445 **humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in**
446 **an amount of $10,000,000;**

447 **B. economic losses on all claims allowed by law;**

448 **C. special damages in an amount to be determined at trial;**

449 **D. punitive damages on all claims allowed by law against individual Defendants and in an**
450 **amount to be determined at trial;**

451 **E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988,**

452 **witness fees, on all claims allowed by law;**

453 **F. pre- and post-judgment interest at the lawful rate; and,**

454 **G. any further relief that this court deems just and proper, and any other appropriate relief at**
455 **law and equity.**

456 **PLAINTIFF REQUESTS A TRIAL BY JURY.**

457     Respectfully submitted this 10th day of April, 2020.

458

459                          **Lenton Credelle Brown**

460                          **Post Office Box 248**

461                          **Winterville, North Carolina**

462                             **28590-0248**

463                            **1 (252) 208-815**

464                   **americanrealtyinvestments1@gmail.com**

465                               **PLAINTIFF**

466                       **CERTIFICATE OF SERVICE**

467         **I, Lenton Credelle Brown, hereby certify that I have filed the foregoing**

468 **AMENDED, and CERTIFICATE OF SERVICE IN CASE NO. 4:17-CV- 180-FL with the**

469 **Clerk of Court and also duly served the foregoing upon Defendants by depositing a copy**

470 **thereof, via First Class mail, postage paid in the United States mail, addressed to:**

471

472

473

474                            **Lenton Credelle Brown**

475                            **Post Office Box 248**

476                           **Winterville, North Carolina**

477                              28590-0248